FILED

JAN 17 2017

Clerk, US District Court
District of Montana - Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RONALD O. LATRAY,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER NEGEL,<br>and SHERIFF MIKE LINDER,<br><br>Defendants. | CV 15-136-BLG-SPW-TJC<br><br>FINDINGS AND<br>RECOMMENDATIONS OF<br>UNITED STATES MAGISTRATE<br>JUDGE |

Ronald O. Latray ("Latray") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action under 42 U.S.C. § 1983. This case now proceeds on Latray's Amended Complaint filed February 16, 2016. (Doc. 7.) Two prior defendants and the corresponding claims against them were dismissed, as were Latray's claims regarding denial of access to the courts. (Docs. 8, 9.) Currently pending are Latray's claims of excessive force, denial of medical care, and unconstitutional conditions of confinement alleged against Defendants Officer Negel and Sheriff Mike Linder.

On August 2, 2016, Defendants Negel and Linder ("Defendants") filed a motion under Fed. R. Civ. P. 12(b)(6) to dismiss this action for failure to state a

1

claim based upon Latray's purported failure to exhaust his administrative remedies. (Docs. 12, 13.) On August 15, 2016, Latray filed a response in opposition to the motion to dismiss. (Doc. 15.)

## I. Latray's Allegations

The events at issue allegedly occurred at the Yellowstone County Detention Facility ("YCDF") in Billings, Montana, following Latray's arrest on March 24, 2015. Latray alleges that once in custody, he was instructed to place his hands on a ledge in front of a plexiglass window. Latray contends that he complied without resistance, but YCDF Correctional Officer Negel nevertheless smashed Latray's head into the window causing a large laceration above Latray's right eye. Latray alleges Officer Negel continued to use force against him by holding his face against the window and choking him.

Negel allegedly then called for a spit hood, threw Latray backwards by his neck into a chair, restrained him, and put him into a small cell. Latray claims he was left restrained for hours and had to urinate in his pants. Latray was eventually let out of the chair and given a sack lunch. Latray states he was subsequently held in a "filthy" cell for two days with no bedding, shower, soap, or towel. Latray believed he needed stitches for the laceration above his eye, but did not receive medical attention. (Doc. 7 at 8.) Instead, he claims his wound was left untreated,

and he had to wear and sleep in soiled clothing. (*Id.* at 8.) Latray alleges Yellowstone County Sheriff Linder failed to properly instruct, train, and supervise his staff. He also alleges that Sheriff Linder failed to treat his medical needs. (*Id.* at 9-10.)

## II. Applicable Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In analyzing whether a complaint states a claim, "a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Hamilton v. Brown*, 630 F. 3d 889, 892-93 (9th Cir. 2011).

The Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983...or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the exhaustion requirement under the PLRA is not absolute.

3

"The PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" *Sapp v. Kimbrell*, 623 F. 3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997(e)(a)). This provision provides a textual exception to the requirement of mandatory exhaustion which hinges on the "availability" of the administrative remedies. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, greivance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859, citing *Booth v. Churner*, 532 U.S. 731, 738 (2001); see also, *Nunez v. Duncan*, 591 F. 3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Fed. R. Civ. P. 56. *Albino v. Baca*, 747 F. 3d 1162 (9th Cir. 2014) (en banc). Exhaustion under § 1997e(a) is an affirmative defense that must be pled and proved by a defendant. *Jones v. Bock*, 549 U.S. 199 (2007). The defendant bears the burden of proving there was an available administrative remedy, and that the prisoner did not exhaust it. *Albino*, 747 F. 3d at 1172. If the defendant meets this burden, the burden shifts to the plaintiff to

"come forward with evidence showing there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* In adjudicating summary judgment on the issue of exhaustion, the court must view all the facts in the record in the light most favorable to the plaintiff. *Id.* at 1173.

A motion for summary judgment is unnecessary, however, "[i]n the rare event that a failure to exhaust is clear on the face of a complaint, [then] a defendant may move for dismissal under Rule 12(b)(6)." *Id.* at 1166. The *Albino* panel explained that a Rule 12(b)(6) dismissal is the rare exception, rather than the rule, because "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 169, citing *Jones*, 549 U.S. at 216; see also *Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007) ("[O]nly in the rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.").

### A. Defendants' Argument

Defendants believe Latray's complaint shows "a clear failure to exhaust" in part because he marked boxes indicating both that he had and had not sought administrative remedies and, specifically, that he did not seek such remedies

5

relative to his injuries because he did not believe that to be a "grievable issue." (Doc. 13 at 4.) The defendants then reason that because the remaining portions of Latray's claims relate to harassment by detention center officials, they would likely be deemed "grievable" by the Ninth Circuit. Because Latray indicated that he did not seek redress for these claims, the defendants posit that the face of Latray's complaint reveals that he did not seek out the requisite administrative remedies. (*Id.*)

### B. Latray's Response

Latray contends that the unlawful assault and immediate medical needs from which he suffered and for which he was deprived treatment would not have benefitted from a grievance process. (Doc. 15 at 1.) Further, Latray states that he was not provided with a copy of YCDF's Inmate Rules and Regulations. (*Id.* at 3.) Thus, according to Latray, he was prevented from accessing the administrative rules, and no applicable procedures were available to him. (*Id.*) Finally, Latray argues that the assault against him and from which he suffered injury constituted a criminal act, and that this act alone gives rise to liability under 42. U.S.C. § 1983. (*Id.*)

### III. Analysis

Reviewing the positions of both parties, it is apparent there are factual

issues pertinent to whether or not Latray exhausted the administrative remedies that were available to him. Defendants argue that Latray's failure to exhaust is evident from the face of his complaint; Latray counters that he was unable to properly exhaust due, at least in part, to the unavailability of requisite information and procedures.

Upon review of Latray's response, this Court finds this case does not present the "rare event" where failure to exhaust is "clear on the face of the complaint." *Albino*, 747 F. 3d at 1166. At a minimum, there remains a factual question relative to the YCDF grievance procedures, and whether or not Latray was capable of using the procedure to seek relief for the actions of which he now complains. *Ross*, 136 S. Ct. at 1859. While Latray has not established that the administrative remedies were "effectively unavailable" to him, he has demonstrated that this is an issue that should be decided on a more developed record. In order to make a reasoned determination on the issue of exhaustion, the Court requires more information from both parties. That is not to say, however, that this may not be a potentially valid issue to be raised in summary judgment proceedings. Nevertheless, dismissal for failure to exhaust at this point in the proceedings would be premature. Accordingly, the motion to dismiss should be denied.

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

The Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim (Doc. 12) should be denied.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 17th day of January, 2017.

Timothy J. Cavan
United States Magistrate Judge

---

[1] As the deadline allows a party to act after the Findings and Recommendations is "served." it falls under Fed. R. Civ. P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.