

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RONALD O. LATRAY,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER NEGEL, and SHERIFF MIKE LINDER,<br><br>Defendants. | CV 15-00136-BLG-SPW-TJC<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Ronald LaTray, a state prisoner proceeding in forma pauperis and without counsel, filed this civil rights action under 42 U.S.C. § 1983. (Doc. 7.) Currently pending are Mr. LaTray's claims of excessive force, denial of medical care, and unconstitutional conditions of confinement alleged against Defendants Officer Negel and Sheriff Mike Linder. Defendants filed a motion for summary judgment, arguing Mr. LaTray failed to exhaust his administrative remedies. (Doc. 30.)

Having considered the parties' arguments and submissions, the Court finds that Defendants have met their burden of demonstrating that administrative remedies were available, and Mr. LaTray failed to properly utilize those remedies. The Motion for Summary Judgment (Doc. 30) should be granted and this matter

1

dismissed.

I. **STANDARD**

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* On summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id.* at 159.

By notice provided on June 1, 2017 (Doc. 33), Mr. LaTray was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II. FACTS

### A. Underlying Facts

The events at issue allegedly occurred at the Yellowstone County Detention Facility ("YCDF") in Billings, Montana, following Mr. LaTray's arrest on March 24, 2015. Mr. LaTray alleges that once in custody, he was instructed to place his hands on a ledge in front of a plexiglass window. Mr. LaTray contends YCDF Correctional Officer Negel smashed Mr. LaTray's head into the window causing a laceration above Mr. LaTray's right eye even though he was complying without resistance. Mr. LaTray alleges Officer Negel continued to use force by holding his face against the window and choking him.

Officer Negel allegedly then called for a spit hood, threw Mr. LaTray backwards by his neck into a chair, restrained him, and put him into a small cell. Mr. LaTray claims he was left restrained for hours and had to urinate in his pants. He was eventually let out of the chair and given a sack lunch, but was then held in a "filthy" cell for two days with no bedding, shower, soap, or towel and soiled clothing. Mr. LaTray believed he needed stitches for the laceration above his eye, but did not receive medical attention. (Doc. 7 at 8.) Mr. LaTray alleges Yellowstone County Sheriff Linder failed to properly instruct, train, and supervise his staff, and failed to treat his medical needs. (Doc. 7 at 9-10.)

## B. Facts related to Grievance Procedures

On March 27, 2015, Kelly Hogg, an officer with the Yellowstone County Sheriff's Office at the Yellowstone County Detention Facility, provided Mr. LaTray with the Yellowstone County Detention Facility Prisoner Handbook, which includes a section on filing grievances. (Statement of Undisputed Facts ¶ 24, Doc. 32 at 8.)

That section provides as follows:

> 19.1 Grievances will be written on an Inmate Complaint Form and given to the unit officer to forward to the shift supervisor.
> 19.2 Complaints should not contain profanity or obscene language.
> 19.3 Complaints will be investigated and answered in writing. Complaints other than appeals of disciplinary board findings directed to the facility administrator should be directed to the appropriate staff at the closest level in the chain of command. The chain-of-command is the unit officer to the sergeant, to administration, to the Sheriff.
> 19.4 Inmates not satisfied with the first answer to a complaint should send a copy of the first complaint attached to another completed complaint form and forwarded through the chain of command. This process may continue up to the Sheriff who will make the final decision.
> 19.5 Negative action will not be taken against any inmate filing a complaint unless the system is being misused.

(Inmate Rules, Doc. 46-1 at 33.)

Mr. LaTray admits he received the prisoner handbook with the grievance procedure; admits he did not file any grievances related to the March 24, 2015 use of force, inadequate medical care, or living conditions; and admits he did utilize

the procedure by filing 15 other grievances. (Statement of Undisputed Facts ¶ 24, Doc. 32 at 8-9; Statement of Disputed Facts ¶ 24, Doc. 51 at 9.)

## III. DISCUSSION

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner

failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Once the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S., at 738, 121 S.Ct. 1819.)

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*,

136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). The procedures need not be sufficiently "plain," however, as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015)

7

(holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

It is undisputed that Mr. LaTray was given a copy of the Inmate Rules, which included a section on filing grievances. Mr. LaTray admits he did not file any grievances regarding the March 24, 2015 alleged use of force, inadequate medical care, or inhumane living conditions, even though he filed 15 other grievances. (Statement of Disputed Facts ¶ 24, Doc. 51 at 9.) It is therefore clear that the grievance procedure was available to him, that he understood the process, and that he was ready, willing and able to invoke the process.

The Defendants have therefore established that Mr. LaTray had access to available administrative remedies, and he failed to exhaust those administrative remedies. Defendants' Motion for Summary Judgment should therefore be granted and this matter dismissed.

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

1. Defendant's Motion for Summary Judgment (Doc. 16) should be GRANTED and this matter DISMISSED.

2. The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit. The record makes plain the Amended Complaint lacks arguable substance in law or fact.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

///

---

[1] As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.

until entry of the District Court's final judgment.

DATED this 21st day of August, 2017.

/s/ Timothy J. Cavan
Timothy J. Cavan
United States Magistrate Judge